| | |
|---|---|
| 14TH JUDICIAL DISTRICT COURT, ROUTT COUNTY, STATE OF COLORADO<br>1955 Shield Drive Unit 200<br>Steamboat Springs, CO 80487<br><br>**PLAINTIFF:** CHRISTOPHER ACHESON, Individually and for Others Similarly Situated<br><br>**v.**<br><br>**DEFENDANT:** PEABODY TWENTYMILE MINING, LLC | DATE FILED<br>June 28, 2024 4:29 PM<br>FILING ID: 42C6DA52F1302<br>CASE NUMBER: 2024CV30052<br><br><br><br><br>☐   COURT USE ONLY   ☐ |
| Attorneys for Plaintiff:<br><br>Brian D. Gonzales, Atty. Reg. # 29775<br>**BRIAN D. GONZALES, PLLC**<br>2580 East Harmony Road, Suite 201<br>Fort Collins, Colorado 80528<br>Phone: (970) 214-0562<br>BGonzales@ColoradoWageLaw.com<br><br>Michael A. Josephson*<br>Andrew W. Dunlap*<br>**JOSEPHSON DUNLAP LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Phone: (713) 352-1100<br>Fax:     (713) 352-3300<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br><br>Richard J. (Rex) Burch*<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Phone: (713) 877-8788<br>Fax:     (713) 877-8065<br>rburch@brucknerburch.com<br><br>*Pro hac vice applications forthcoming* | Case Number:<br><br><br><br><br>Ctrm/Div: |
| **ORIGINAL CLASS ACTION COMPLAINT & JURY DEMAND** | |

1

**SUMMARY**

1. Christopher Acheson ("Acheson") brings this class action to recover unpaid wages and other damages from Peabody Twentymile Mining, LLC (Peabody).

2. Peabody employed Acheson as one of its Miners (defined below) in Routt County, Colorado.

3. Peabody pays Acheson and its other Miners on an hourly basis.

4. Acheson and the other Miners regularly work more than 40 hours a workweek and/or more than 12 hours a workday.

5. But Peabody does not pay Acheson and its other Miners for all their hours worked, including overtime hours.

6. Instead, Peabody requires Acheson and its other Miners to gather tools and equipment necessary to perform their job duties and suit out in protective clothing and safety gear necessary to "off the clock" and without compensation.

7. This pre-shift "off the clock" work takes approximately 15 to 30 minutes each workday.

8. And, after the end of their scheduled shifts, Peabody requires Acheson and its other Miners to store tools and equipment necessary to perform their job duties, remove their protective clothing and safety gear necessary to safely perform their job duties, and wash up, "off the clock" and without compensation. (¶¶ 6, 8 together constitute Peabody's "pre/post shift off the clock policy").

9. This post-shift "off the clock" work takes approximately 30 minutes to an hour each workday.

10. Additionally, Peabody does not authorize, permit, make available, or ensure that Acheson and the other Miners receive *bona fide* meal breaks each workday that exceeds 5 hours, but deducts 30 minutes each workday from Acheson and the other Miners for so called "meal breaks" (Peabody's "meal deduction policy").

11. And Peabody does not authorize or permit Acheson and the other Miners receive *bona fide* rest breaks.

12. Peabody does not provide Acheson and the other Miners compensation for the meal and rest breaks it fails to provide and/or make available.

13. Thus, Peabody violates the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq*. (CWCA), the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq*. (CMWA), and their implementing regulations, *see, e.g.,* 7 Colo. Code Regs. § 1103-1 (COMPS Orders) in at least three ways:

    a. failing to pay Acheson and the other Miners for all hours worked, including all overtime hours;

    b. failing to ensure they received all required meal breaks and failing to compensate them for missed meal breaks; and

    c. failing to ensure they received all required rest breaks and failing to compensate them for missed rest breaks.

## JURISDICTION & VENUE

14. This Court has subject matter jurisdiction pursuant to COLO. CONST. ART. VI § 9(1) because this case arises under Colorado law, and Peabody's violative conduct occurred in Colorado.

15. This Court has specific personal jurisdiction over Peabody based on Peabody's substantial operations in Colorado and its substantial contacts with, and conduct directed toward Colorado that form the basis of this class action. C.R.S. § 13-1-124.

16. Specifically, Peabody employs Acheson and the other Miners in Colorado and fails to pay them earned wages, minimum wages, overtime wages, and provide required rest and meal periods for their work performed in Colorado.

17. Venue is proper pursuant to C.R.C.P. 98(c) because a substantial part of the events or omissions giving rise to this action occurred in Routt County.

18. Specifically, Peabody employed Acheson and other Miners in Routt County.

19. Finally, this matter is properly in this Court because: (1) the aggregate amount in controversy is under $5 million; (2) the size of Acheson's proposed class is fewer than 100 individual members; (3) Acheson's and the other Miners' claims arise under Colorado law, rather than any federal statute; and (4) there is no embedded federal question or issue in Acheson's and the other Miners' claims arising solely under Colorado law.

## PARTIES

20. Peabody employed Acheson as a surface miner in Routt County, Colorado from approximately March 2023 until October 2023.

21. At all relevant times, Acheson and the other Miners were Peabody's covered "employees" within the meaning of the CWCA, CMWA, and COMPS Orders. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-1(1.5).

22. Throughout Acheson's employment, Peabody classified him as non-exempt from overtime and paid him on an hourly basis.

23. Throughout his employment, under its illegal pre/post shift off the clock policy, Peabody required Acheson to gather tools and equipment necessary to perform their job duties and suit out in protective clothing and safety gear necessary to safely perform his job duties "off the clock" and without compensation prior to his scheduled shift.

24. And throughout his employment, under its illegal pre/post shift off the clock policy, Peabody required Acheson to store tools and equipment necessary to perform his job duties, remove

3

his protective clothing and safety gear necessary to safely perform their job duties, and wash up "off the clock" and without compensation after his scheduled shift.

25. Peabody did not consider this time in determining the correct amount of overtime hours worked.

26. Further, throughout his employment, Peabody subjected Acheson to its uniform, illegal meal deduction policy, deducting 30 minutes each workday for a "meal break," but does not authorize, permit, make available, or ensure Acheson has a *bona fide* meal break during shifts exceeding 5 hours.

27. Throughout his employment, Acheson did not receive *bona fide* meal breaks (or compensation for missed meal breaks).

28. And Peabody did not authorize and permit Acheson to take *bona fide* 10-minute rest breaks throughout his employment for every 4 hours or major fraction thereof that he worked.

29. Nor did Acheson receive *bona fide* 10-minute rest breaks throughout his employment (or compensation for his missed rest breaks).

30. Peabody likewise subjects its other Miners to these illegal policies.

31. Thus, Peabody uniformly deprives Acheson and the other Miners of overtime pay at the required premium rate for all hours worked in excess of 40 in a workweek and 12 in a workday, including those worked "off the clock," in violation of the CWCA, CMWA, and COMPS Orders.

32. Likewise, Peabody uniformly deprives them of earned wages for all hours worked, including those worked "off the clock," in violation of the CWCA, CMWA, and COMPS Orders.

33. And, Peabody uniformly deprives Acheson and the other Miners of *bona fide* meal and rest breaks, deducts 30 minutes from them each workday for "meal breaks," and does not provide compensation for missed meal and rest breaks in violation of the CWCA, CMWA, and COMPS Orders.

34. The Putative Class of similarly situated employees is defined as:

> **All hourly Miners in Colorado who worked during the past 6 years through final resolution of this action ("Miners").**

35. The Miners can be readily ascertained from Peabody's business and personnel records.

36. Peabody is a Delaware corporation headquartered in St. Louis, Missouri.

37. Peabody is registered to do business in Colorado.

38. Peabody employs employees acting in its interests in Routt County, Colorado, including Acheson and the other Miners.

39. At all relevant times, Peabody transacted and conducted substantial business in Colorado and specifically in Routt County, Colorado, as well as other parts of Colorado.

40. At all relevant times, Peabody was subject to the CWCA, CMWA, and COMPS Orders, because Peabody was (and is) an "employer" within the meaning of the CWCA, CMWA, and COMPS Orders. *See* C.R.S. § 8-4-101(6); C.C.R. 1103-1(1.6).

41. Peabody may be served through its registered agent: **Corporation Service Company, 1900 W Littleton Boulevard, Littleton, Colorado 80120**.

## FACTS

42. Peabody holds itself out as "a leading coal producer, providing essential products for the production of affordable, reliable energy and steel."[1]

43. To meet these business objectives, Peabody hires employees like Acheson and the other Miners to perform underground and surface mining work, including in Routt County, Colorado.

44. Peabody uniformly classifies Acheson and its other Miners as nonexempt from overtime and pays them on an hourly basis.

45. Acheson and the other Miners regularly work more than 40 hours a workweek and 12 hours a workday.

46. While exact job duties and precise locations may differ, Acheson and the other Miners are subject to Peabody's same or similar illegal policies –its pre/post shift off the clock policy, meal deduction policy, and failure to authorize and/or permit rest breaks and/or provide compensation – for similar work.

47. For example, Peabody employed Acheson as a surface miner at its Twentymile Coal Mine in Routt County, Colorado from approximately March 2023 until October 2023.

48. Acheson was Peabody's hourly, nonexempt employee.

49. Specifically, Peabody paid Acheson approximately $38 an hour.

50. As a surface miner, Acheson's job duties included gathering and storing tools and equipment necessary to perform his job duties, donning and doffing protective clothing and safety gear, and operating conveyor belts to facilitate the movement of coal out of the mine to be washed, further processed, and/or prepared for shipment.

51. Throughout his employment, Peabody required Acheson to report his "on the clock" hours worked to Peabody by scanning his employee ID badge in Peabody's designated timekeeping system.

---

[1] https://www.peabodyenergy.com/Operations/U-S-Mining/Western-Mining/Twentymile-Mine (last visited June 6, 2024).

5

52. Throughout his employment, Acheson regularly worked more than 40 hours a workweek and 12 hours a workday.

53. Peabody's records show that Acheson regularly worked more than 40 hours a workweek and more than 12 hours in a workday "on the clock."

54. Acheson worked the day shift for seven days in a row, had seven days off, and then worked the night shift for seven days in a row.

55. Acheson was scheduled to work 3 13-hours shifts Friday to Sunday and 4 10-hour shifts Monday to Thursday.

56. Indeed, Acheson typically worked approximately 10 hours and 30 minutes to 13 hours and 50 minutes a day for 7 days a week (82 hours and 30 minutes to 84 hours and 50 minutes a workweek).

57. But throughout his employment, Peabody did not pay Acheson for all his hours worked, including overtime hours.

58. Instead, throughout his employment, Peabody subjected Acheson to its uniform, illegal pre/post shift off the clock policy.

59. Specifically, Peabody required Acheson to gather tools and equipment necessary to perform his mining duties and suit out in protective clothing and safety gear (including reflective pants, vest, and shirt, safety glasses, gloves, respirator, ear plugs, hardhat, headlamp, metatarsal boots), "off the clock" and without compensation.

60. This pre-shift "off the clock" work took Acheson approximately 15 to 20 minutes each workday.

61. And after the end of his scheduled shift, Peabody required Acheson to store his tools and equipment, remove his protective clothing and safety gear, and wash up, "off the clock" and without compensation.

62. This post-shift "off the clock" work took Acheson approximately 15 to 30 minutes each workday.

63. Peabody also subjected Acheson to its illegal meal deduction policy.

64. Specifically, Peabody deducted 30 minutes of time worked each workday from Acheson but did not authorize or permit *bona fide* 30-minute meal breaks, as required by Colorado wage laws. *See* 7 C.C.R. 1103-1 (5.1).

65. Peabody did not actually receive *bona fide* uninterrupted meal breaks.

66. Instead, to meet Peabody's strict productivity requirements, Acheson was forced to perform his regular mining duties without a *bona fide* meal break.

67. Because of these constant work-related tasks, Acheson was not free to engage in personal activities during "meal breaks."

68. Peabody failed to compensate Acheson for his missed meal breaks.

69. Similarly, because of Peabody's strict productivity requirements, Peabody did not authorize or permit Acheson to take *bona fide* 10-minute rest breaks for every 4 hours or major fraction thereof, he worked. *See* 7 C.C.R. 1103-1 (5.2).

70. And Peabody failed to compensate Acheson for his missed rest breaks.

71. This unpaid "off the clock" work is compensable under Colorado law because Peabody knew, or should have known, that: (1) Acheson was performing unpaid work during his "meal breaks" and "rest breaks"; (2) he was interrupted or subject to interruptions with work duties during any attempted "meal break" and "rest break"; (3) he was not completely relieved of all duties during his "meal breaks" and "rest breaks"; (4) he entirely skipped "meal breaks" and "rest breaks" due to work demands; (5) his "meal breaks" were less than 30 consecutive minutes and his "rest breaks" were less than 10 minutes; and/or (6) he was not free to engage in personal activities during his "meal breaks" and "rest breaks" because of constant work interruptions.

72. Thus, Acheson routinely spent his "meal breaks" and "rest breaks" on-duty and performing work "off the clock."

73. Like Acheson, the other Miners work at least 10 hours and 30 minutes to 13 hours and 50 minutes a day for 7 days a week (82 hours and 30 minutes to 84 hours and 50 minutes a workweek).

74. Peabody requires Acheson and its other Miners to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

75. Like Acheson, Peabody subjects its other Miners to its illegal pre/post shift off the clock policy.

76. And, like Acheson, the other Miners are forced to perform compensable work "off the clock" before their scheduled shift.

77. Specifically, before clocking in for their shifts, Peabody requires the other Miners to gather tools and equipment necessary to perform their mining duties and suit out in protective clothing and safety gear (including reflective pants, vest, and shirt, safety glasses, gloves, respirator, ear plugs, hardhat, headlamp, metatarsal boots), "off the clock" and without compensation.

78. This pre-shift "off the clock" work takes the Miners at least 15 to 20 minutes each workday.

79. And after the end of their scheduled shift, Peabody requires the Miners to store their tools and equipment, remove their protective clothing and safety gear, and wash up, "off the clock" and without compensation.

7

80. This post-shift "off the clock" work takes the Miners at least 15 to 30 minutes each workday.

81. As with Acheson, the other Miners perform this pre/post shift work off the clock on Peabody's premises and for Peabody's benefit.

82. As with Acheson, the other Miners perform this pre/post shift work off the clock with Peabody's permission.

83. Indeed, like Acheson, the other Miners could not perform their mining duties in accordance with Peabody's policies, procedures, standards, and expectations unless they perform this pre/post shift "off the clock" work.

84. In other words, Acheson's and the other Miners' mandatory pre/post shift "off the clock" work is a fundamental requirement of their job duties.

85. Peabody could not eliminate this pre/post shift "off the clock" work without impairing or eliminating Acheson's and the other Miners' ability to perform their mining duties for Peabody.

86. And Peabody knows Acheson and its other Miners perform this compensable pre/post shift "off the clock" work because Peabody requires them to do so.

87. But Peabody failed to exercise its duty as Acheson's and the other Miners' employer to ensure these employees were not and are not performing compensable work that Peabody does not want performed "off the clock" before and after their scheduled shifts.

88. Thus, Peabody requested, suffered, permitted, or allowed Acheson and its other Miners to work "off the clock" before and after their scheduled shifts.

89. Peabody's management received complaints from its Miners that they were required to perform compensable work "off the clock," without compensation, as Peabody required.

90. Additionally, just as with Acheson, Peabody subjected its other Miners to its illegal meal deduction policy.

91. Peabody deducted 30 minutes each workday from the Miners' hours worked but did not authorize, permit, make available, or ensure the Miners could take *bona fide* 30-minute meal breaks, as required, for shifts exceeding 5 hours.

92. Instead, to complete their assigned heavy workloads in accordance with Peabody's policies, procedures, standards, and expectations, the Miners were forced to perform their regular mining duties and responsibilities during their "meal breaks."

93. The "off the clock" work Acheson and the other Miners performed during their "meal breaks" was similar if not the same.

94. Because of the constant work-related tasks, Acheson and the other Miners are not free to engage in personal activities during required "meal breaks."

8

95. Peabody failed to compensate the Miners for their missed meal breaks.

96. Similarly, Peabody did not authorize or permit the other Miners to take *bona fide* 10-minute rest periods for every 4 hours worked or major fraction thereof.

97. Peabody failed to compensate the other Miners for their missed rest breaks.

98. This unpaid "off the clock" work is compensable under Colorado law because Peabody knew, or should have known, that: (1) the Miners were performing unpaid work during their "off the clock" meal breaks and during their "rest breaks"; (2) they were interrupted or subject to interruptions with work duties during any attempted "meal break" and "rest break"; (3) they were not completely relieved of all duties during their "meal breaks" and "rest breaks"; (4) they entirely skipped their "meal breaks" and "rest breaks" due to work demands; (5) their "meal breaks" were less than 30 consecutive minutes; and/or (6) they were not free to engage in personal activities during their "meal breaks" and "rest breaks" because of constant work interruptions.

99. Thus, the other Miners routinely spend their "meal breaks" and "rest breaks" on-duty and performing work "off the clock."

100. And Peabody knew Acheson and the other Miners regularly worked "off the clock" during their unpaid "meal breaks" and "rest breaks."

101. Despite accepting the benefits, Peabody does not pay Acheson and its other Miners for the compensable work they perform "off the clock" during their unpaid "meal breaks" and during their "rest breaks."

### CLASS ACTION ALLEGATIONS

102. Acheson incorporates all other paragraphs by reference.

103. Acheson brings his claims as a class action on behalf of himself and the other Miners pursuant to C.R.C.P. 23.

104. Like Acheson, the other Miners were victimized by Peabody's illegal pre/post shift off the clock policy, meal deduction policy, and failure to authorize and/or permit *bona fide* rest breaks.

105. Other Miners worked with Acheson and indicated they were paid in the same manner, performed similar work, and were subject to Peabody's illegal pre/post shift off the clock policy, meal deduction policy, and failure to authorize and/or permit *bona fide* rest breaks.

106. Based on his experience with Peabody, Acheson is aware Peabody's pre/post shift off the clock policy, meal deduction policy, and failure to authorize and/or permit *bona fide* rest breaks were imposed on the other Miners.

107. The putative class of Miners is so numerous that the joinder of all potential class members is impracticable.

108. The Miners are similarly situated in the most relevant respects.

109. Even if their specific job titles or precise locations might vary, these differences do not matter for the purposes of determining their entitlement to meal and rest breaks, earned wages for all hours worked, and overtime wages for all hours worked over 40 in a workweek or 12 in a workday.

110. Therefore, the specific job titles or precise job locations of the Miners do not prevent class treatment.

111. Rather, the Miners are held together by Peabody's uniform, illegal pre/post shift off the clock policy, meal deduction policy, and failure to authorize and/or permit *bona fide* rest breaks, which systematically deprived Acheson and the other Miners of *bona fide* meal and rest breaks, earned wages for all hours worked, and overtime wages at the proper premium rate for all hours worked after 40 in a workweek and 12 in a workday.

112. Peabody's failure to pay earned wages and overtime wages as required by Colorado wage laws results from generally applicable, systematic policies and practices that are not dependent on the personal circumstances of the Miners.

113. Peabody's records reflect the number of hours the Miners' recorded they worked "on the clock" each workweek.

114. The back wages owed to Acheson and the other Miners can therefore be calculated using the same formula applied to the same records.

115. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Peabody's records, and there is no detraction from the common nucleus of liability facts.

116. Therefore, the issue of damages does not preclude class treatment.

117. Acheson's experiences are typical of the experiences of the other Miners.

118. Acheson has no interest contrary to, or in conflict with, the other Miners.

119. Like each Miner, Acheson has an interest in obtaining the unpaid wages owed to them under Colorado law.

120. Acheson and his counsel will fairly and adequately protect the interests of the other Miners.

121. Acheson retained counsel with significant experience in complex class action litigation.

122. A class action is superior to other available means for fair and efficient adjudication of this lawsuit.

123. Absent this class action, many Miners likely will not obtain redress for their injuries, and Peabody will reap the unjust benefits of violating Colorado wage laws.

124. Further, even if some of the Miners could afford individual litigation against Peabody, it would be unduly burdensome to the judicial system.

125. Indeed, the multiplicity of actions would create a hardship for the Miners, the Court, and Peabody.

126. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Miners' claims.

127. The questions of law and fact that are common to each Miner predominate over any questions affecting solely the individual members.

128. Among the common questions of law and fact are:

    a. Whether Peabody required, requested, suffered, or permitted the Miners to work "off the clock," without compensation before and/or after their shifts;

    b. Whether Peabody knew, or had reason to know, the Miners were required, requested, suffered, or permitted, to work "off the clock," without compensation before and/or after their shifts;

    c. Whether Peabody engaged in a policy and practice of deducting 30 minutes from the Miners for "meal breaks," regardless of whether they actually took a *bona fide*, uninterrupted meal break;

    d. Whether Peabody's meal deduction policy deprived the Miners of earned wages for all hours worked in violation of the CWCA, CMWA, and/or COMPS Orders;

    e. Whether Peabody's meal deduction policy deprived the Miners of overtime pay for all overtime hours worked in violation of the CWCA, CMWA, and/or COMPS Orders;

    f. Whether Peabody failed to authorize and/or permit the Miners to take *bona fide* rest breaks.

    g. Whether Peabody's failure to authorize and/or permit the Miners to take *bona fide* rest breaks deprived the Miners of earned wages for all hours worked in violation of the CWCA, CMWA, and/or COMPS Orders;

    h. Whether Peabody's failure to authorize and/or permit the Miners to take *bona fide* rest breaks deprived the Miners of overtime pay for all overtime hours worked in violation of the CWCA, CMWA, and/or COMPS Orders;

    i. Whether Peabody's pre/post shift off the clock policy deprived the Miners of earned wages for all hours worked in violation of the CWCA, CMWA, and/or COMPS Orders;

j. Whether Peabody's pre/post shift off the clock policy deprived the Miners of overtime pay for all overtime hours worked in violation of the CWCA, CMWA, and/or COMPS Orders;

k. Whether Peabody's decision to not pay the Miners all their earned wages for all hours worked, including those worked "off the clock," was made in good faith;

l. Whether Peabody's decision not to pay the Miners overtime wages for all overtime hours worked, including those worked "off the clock," was made in good faith;

m. Whether Peabody's decision not to pay the Miners overtime wages at the required premium rate was made in good faith; and

n. Whether Peabody's violations were willful.

129. Acheson knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

130. As part of its regular business practices, Peabody intentionally, willfully, and repeatedly violated Colorado wage laws with respect to Acheson and the other Miners.

131. Peabody's illegal pre/post shift off the clock policy, meal deduction policy, and failure to authorize and/or permit *bona fide* rest breaks deprived Acheson and the other Miners of earned wages for all hours worked and overtime wages at the proper premium rate for all hours worked after 40 in a workweek and 12 in a workday, which they are owed under Colorado law.

132. Accordingly, all of C.R.C.P. 23's requirements are satisfied, and Acheson's proposed class of Miners merits certification.

### PEABODY'S VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF COLORADO WAGE LAWS

133. Acheson incorporates all other paragraphs by reference.

134. Peabody knew it was subject to the CWCA's, CMWA's, and COMPS Order's respective provisions. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1(1.6).

135. Peabody knew Acheson and the other Miners were its non-exempt employees entitled to overtime pay. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-1(1.5); 7 C.C.R. 1103-1(4.1.1).

136. Peabody knew the CWCA, CMWA, and COMPS Orders, required it to pay non-exempt employees, including Acheson and the other Miners, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 12 in a workday and 40 in a workweek. *See* 7 C.C.R. 1103-1(4.1.1).

137. Peabody knew the CWCA, CMWA, and COMPS Orders further required it to pay employees, including Acheson and the other Miners, all wages earned for all hours of work performed. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

138. Peabody knew Acheson and the other Miners worked over 40 hours in at least one workweek and/or over 12 hours in one workday during the 3 years before this Complaint was filed because Peabody required their "on the clock" hours worked to be recorded using its timekeeping system.

139. Peabody knew the CWCA, CMWA, and COMPS Orders required it to pay employees, including Acheson and the other Miners, for all hours these employees performed compensable work. *See* 7 C.C.R. 1103-1 (3.1).

140. Peabody knew that, as Acheson's and the other Miners' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that Peabody did not want performed. *See* 7 C.C.R. 1103-1 (1.9).

141. Peabody knew it did not authorize and permit Acheson and the other Miners to take *bona fide* rest breaks for every four hours worked or major fraction thereof. *See* 7 CCR 1103-1 (5.2).

142. Peabody knew it did not provide Acheson and the other Miners additional compensation for their on-duty "rest breaks." *See* 7 C.C.R. 1103-1 (5.2.4).

143. Peabody knew it did not authorize and permit Acheson and the other Miners to take *bona fide* meal breaks for shifts exceeding five hours. *See* 7 CCR 1103-1 (5.1).

144. Peabody knew Acheson and the other Miners performed compensable work "off the clock" before their scheduled shifts.

145. Peabody knew Acheson and the other Miners performed compensable work "off the clock" after their scheduled shifts.

146. Peabody knew it controlled Acheson's and the other Miners' pre/post shift "off the clock" work. *See* 7 C.C.R. 1103-1 (1.9).

147. Peabody knew Acheson's and the other Miners' pre/post shift "off the clock" work was necessary to the principal work these employees performed as Peabody miners. *See Id.*

148. Peabody knew Acheson's and the other Miners' pre/post shift "off the clock" work was integral and indispensable to these employees' work as Peabody miners. *See Id.*

149. Thus, Peabody knew it requested, suffered, or permitted Acheson and the other Miners to work "off the clock" during their "meal breaks," "rest breaks," and/or before and/or after their scheduled shifts. *See Id.*; 7 CCR 1103-1 (5).

150. Nonetheless, Peabody did not pay Acheson and the other Miners for the compensable hours and overtime hours they worked "off the clock" during their "meal breaks," "rest breaks," and/or before and/or after their shifts.

151. Acheson and the other Miners complained to Peabody about being required to work "off the clock."

152. As a result of the foregoing conduct, as alleged, Peabody failed to pay wages due thereby violating, and continuing to violate, the CWCA, COMPS Orders, and CMWA. These violations were committed knowingly, willfully, and with reckless disregard of applicable law. *See* C.R.S. § 8-4-109(3)(b)–(c); 7 CCR 1103-1 (8.2).

### COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE CWCA AND COMPS ORDERS
### (CLASS ACTION)

153. Acheson incorporates all other paragraphs by reference.

154. Acheson brings his CWCA overtime claim on behalf of himself and the other Miners pursuant to C.R.C.P. 23.

155. Peabody's conduct violated the CWCA, as implemented by the COMPS Orders. *See* C.R.S. §§ 8-4-101, *et seq.*; 7 C.C.R. 1103-1.

156. At all relevant times, Peabody was subject to the CWCA and the COMPS Orders because Peabody was (and is) an "employer" within the meaning of the CWCA and COMPS Orders. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1(1.6).

157. At all relevant times, Peabody employed Acheson and the other Miners as its covered "employees" within the meaning of the CWCA and COMPS Orders. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-1(1.5).

158. The COMPS Orders require employers, like Peabody, to pay non-exempt employees, including Acheson and the other Miners, overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* remuneration – for all hours worked over 12 in a workday and 40 in a workweek. *See* 7 C.C.R. 1103-1(4.1.1).

159. Acheson and the other Miners are entitled to overtime pay under the COMPS Orders. *See* 7 C.C.R. 1103-1(4.1.1).

160. Peabody violated the CWCA and COMPS Orders by failing to pay Acheson and the other Miners overtime wages at rates not less than 1.5 times their regular rates of pay – based on all remuneration received – for all hours worked over 12 in a workday and 40 in a workweek, including hours worked "off the clock" before and after their shifts and for denied "meal breaks" and "rest breaks," for which Peabody failed to compensate Acheson and the other Miners. *See* 7 C.C.R. 1103-1(4.1.1 and 5).

161. Peabody's unlawful conduct harmed Acheson and the other Miners by depriving them of the proper premium overtime wages they are owed.

162. Accordingly, Acheson and the other Miners are entitled to recover their unpaid overtime wages and an automatic penalty of the greater of two times the amount of the unpaid overtime wages or $1,000. *See* C.R.S. § 8-4-109(3)(b)(I); 7 C.C.R. 1103-1(8.1).

163. Because Peabody's failure to pay these overtime wages was willful, Peabody is also liable to Acheson and the other Miners for treble damages in the amount of three times their unpaid overtime wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(3)(b)(II).

164. Finally, Acheson and the other Miners are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110; C.C.R. 1103-1(8.1).

## COUNT II
### FAILURE TO PAY MINIMUM WAGES UNDER THE CMWA AND COMPS ORDERS
### (CLASS ACTION)

165. Acheson incorporates all other paragraphs by reference.

166. Acheson brings his CMWA minimum wages claim on behalf of himself and the other Miners pursuant to C.R.C.P. 23.

167. Peabody's conduct violated the CMWA, as implemented by the COMPS Orders. *See* 7 C.C.R. 1103-1(1.5).

168. At all relevant times, Peabody was subject to the CMWA because Peabody was (and is) an "employer" within the meaning of the CMWA. *See* 7 C.C.R. 1103-1(1.6).

169. At all relevant times, Peabody employed Acheson and the other Miners as its covered "employees" within the meaning of the CMWA. *See* 7 C.C.R. 1103-1(1.5 and 1.6).

170. The CMWA and COMPS Orders require employers, like Peabody, to pay employees, including Acheson and the other Miners, no less than the minimum hourly wage for all hours worked, including overtime pay for hours worked in excess of 40 per workweek and 12 per day. *See* C.R.S. § 8-6-116; 7 C.C.R. 1103-1 (1.9 and 3).

171. Peabody violated the CMWA and COMPS Order by failing to pay Acheson and the other Miners minimum wages for all hours worked, including hours worked "off the clock" for denied "meal breaks" and "rest breaks," for which Peabody failed to compensate Acheson and the other Miners. *See* 7 C.C.R. 1103-1(4.1.1 and 5).

172. Peabody's unlawful conduct harmed Acheson and the other Miners by depriving them of the minimum wages they are owed.

173. Accordingly, Acheson and the other Miners are entitled to recover their unpaid minimum wages and interest. *See* C.R.S. § 8-6-118.

174. Finally, Acheson and the other Miners are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-6-118.

## COUNT III

### FAILURE TO PAY EARNED WAGES UNDER THE CWCA AND COMPS ORDERS
### (CLASS ACTION)

175. Acheson incorporates all other paragraphs by reference.

176. Acheson brings his CWCA earned wages claim on behalf of himself and the other Miners pursuant to C.R.C.P. 23.

177. Peabody's conduct violates the CWCA. *See* C.R.S. §§ 8-4-101, *et seq*.

178. At all relevant times, Peabody was subject to the CWCA because Peabody was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

179. At all relevant times, Peabody employed Acheson and the other Miners as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

180. The CWCA requires employers, like Peabody, to pay employees, including Acheson and the other Miners, all wages earned, due, and owing on their regular payday and following termination of their employment. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

181. Peabody violated the CWCA by failing to pay Acheson and the other Miners all their wages earned for all the hours of work they performed for Peabody, including overtime wages calculated at the required rate and hours worked "off the clock" before their scheduled shifts and after their scheduled shifts, for time deducted for "meal breaks," and for "meal breaks" and "rest breaks" that Peabody failed to permit and/or authorize, for which Peabody failed to compensate Acheson and the other Miners. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1); 7 C.C.R. 1103-1(4.1.1, and 5).

182. Peabody's unlawful conduct harmed Acheson and the other Miners by depriving them of the earned wages they are owed.

183. Accordingly, Acheson and the other Miners are entitled to recover their unpaid earned wages and an automatic penalty in the amount of two times the amount of the unpaid wages or compensation or $1,000, whichever is greater. *See* C.R.S. § 8-4-109(3).

184. Because Peabody's failure to pay these earned wages was willful, Peabody is also liable to Acheson and the other Miners for treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(b)(II).

185. Finally, Acheson and the other Miners are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110.

## COUNT IV

### CIVIL THEFT OF WAGES
### (CLASS ACTION)

186. Acheson incorporates all other paragraphs by reference.

187. Acheson brings his civil theft claim on behalf of himself and the other Miners pursuant to C.R.C.P. 23.

188. At all relevant times, Peabody was subject to the CWCA because Peabody was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

189. At all relevant times, Peabody employed Acheson and the other Miners as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

190. Peabody knew it failed to pay Acheson and the other Miners minimum wage and overtime because Peabody knew they performed work for Peabody "off the clock" before and after their scheduled shifts and during "meal breaks" and "rest breaks" that Peabody failed to authorize and/or permit and for which Peabody failed to compensate Acheson and the other Miners.

191. Peabody's knowing failure to pay minimum wage under the CMWA, constitutes theft pursuant to C.R.S. § 18-4-401. *See* C.R.S. § 18-6-116.

192. As a result, Peabody's failure to pay minimum wage constitutes civil theft pursuant to C.R.S. § 18-4-405.

193. Accordingly, Acheson and the other Miners are entitled to the greater of $200 or treble damages. *See* C.R.S. § 18-4-405.

194. Acheson and the other Miners are also entitled to attorney's fees, costs, statutory interest, and all other relief deemed appropriate by the Court. *See* C.R.S. § 18-4-405.

## JURY DEMAND

195. Acheson demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Acheson, individually and on behalf of the other Miners, seeks the following relief:

    a. An Order certifying the Miners as a Class and certifying this litigation as a class action pursuant to C.R.C.P. 23;

    b. An Order appointing Acheson and his counsel to represent the interests of the Miners;

    c. An Order authorizing prompt notice of this litigation to all Miners;

    d. An Order finding Peabody liable to Acheson and the other Miners for the unpaid overtime wages owed under the CWCA, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation of $1,000, plus treble damages in the amount of three times their unpaid wages or $3,000, whichever is greater;

    e.    An Order finding Peabody liable to Acheson and the other Miners for their unpaid earned wages owed under the CWCA, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation or $1,000, plus treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater;

    f.    An Order finding Peabody liable to Acheson and the other Miners for their unpaid minimum wages owed under the CMWA, plus interest;

    g.    Judgment awarding Acheson and the other Miners all unpaid earned wages, unpaid minimum wages, unpaid overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the CWCA and CMWA;

    h.    An Order awarding attorneys' fees, costs, and expenses;

    i.    Pre- and post-judgment interest at the highest applicable rates; and

    j.    Such other and further relief as may be necessary and appropriate.

Dated: June 28, 2024

Respectfully submitted,

**BRIAN D. GONZALES PLLC**

By: */s/ Brian D. Gonzales*
    Brian D. Gonzales
2580 East Harmony Road, Suite 201
Fort Collins, Colorado 80528
Phone: (970) 214-0562
bgonzales@coloradowagelaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax:    (713) 877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR ACHESON & THE MINERS**